# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 19-192** |
| **RANDY LEE SWACKHAMMER** | : | |

<u>ORDER</u>

AND NOW, this ____ day of _____, 2021, upon consideration of the government's motion, pursuant to Section 5K1.1 of the Sentencing Guidelines, for a downward departure, the Court enters this Order.

The Court finds as follows:

1. **Nature of assistance.** Section 5K1.1 lists as a relevant factor "the nature and extent of the defendant's assistance." The defendant provided detailed information about a health care fraud conspiracy and its participants. The defendant's information assisted the government in bringing charges against other individuals. The defendant proactively cooperated by making consensual recordings of individuals engaged in the health fraud conspiracy on behalf of law enforcement. Last, the defendant was prepared to testify in several cases throughout the United States, including at the trial in the case of *United States v. Hagen*, et al., 19-cr-146 (NDTX) and *United States v. McNeal*, 19-cr-146 (MDFL).

2. **Significance of cooperation**. Section 5K1.1 lists as a relevant factor "the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered." The defendant's cooperation was significant. The detailed information and corroborating evidence that the defendant provided substantially assisted the government in investigating and prosecuting others

involved in the telemedicine scheme. Notably, the defendant was the first medical professional in the scheme to plead guilty and cooperate.

3. **Reliability of information.** Section 5K1.1 lists as a relevant factor "the truthfulness, completeness, and reliability of any information or testimony provided by the defendant." The defendant provided information about the conspiracy to commit health care fraud that the government deemed truthful, complete, and reliable.

4. **Danger to defendant.** Section 5K1.1 lists as a relevant factor "any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance." Persons who cooperate with the government often face retaliation.

5. **Timeliness.** Section 5K1.1 lists as a relevant factor "the timeliness of the defendant's assistance." The defendant indicated his desire to cooperate with the government prior to any charges being filed against him.

6. **Other factors.** The court may consider other relevant factors in determining whether and to what extent to depart. The Court notes that the defendant has not had any other contacts with law enforcement.

Upon considering and balancing all of these factors, the Court determines that the defendant provided substantial assistance to the government in a matter of public significance, specifically the investigation and prosecution of members of a health care fraud Therefore, the government's motion under Section 5K1.1 is hereby GRANTED.

BY THE COURT:

_____

HONORABLE MARK A. KEARNEY
*Judge, United States District Court*

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO.  19-192** |
| **RANDY LEE SWACKHAMMER** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR**
**DOWNWARD DEPARTURE FROM SENTENCING GUIDELINE RANGE**

The United States of America, by its attorneys, Jennifer A. Williams, United

States Attorney for the Eastern District of Pennsylvania, and Debra Jaroslawicz, Trial Attorney

for the Criminal Division, Fraud Section, hereby files a motion, pursuant to Section 5K1.1 of the

United States Sentencing Guidelines ("USSG") in support of a downward departure below the

sentencing guideline range as calculated by the United States Probation Department

("Probation"), based upon the defendant's substantial assistance in the investigation and

prosecution of other persons.  In support of this motion, the government submits this

memorandum.

I.      **BACKGROUND**

On April 9, 2019, the government filed a one-count Information, charging the

defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code,

Section 1349 for his role in a health care fraud and illegal kickback scheme in which the defendant

conspired with Telemedicine Company B, and others known and unknown to the United States

Attorney, to commit healthcare fraud.  The goal of the conspiracy was to bill Medicare and other

insurers for durable medical equipment ("DME") that the defendant and other medical

professionals prescribed for beneficiaries regardless of medical necessity.  These DME orders were

primarily billed to Medicare by DME companies across the United States who paid illegal

kickbacks and bribes to call centers in exchange for completed doctors' orders of DME. The defendant caused the submission of approximately $5,898,180 of false and fraudulent claims to Medicare for medically unnecessary DME, specifically, orthotic braces of the back, knee, shoulder, and wrist.

The defendant was a licensed medical doctor in the Commonwealth of Pennsylvania, State of North Carolina, State of West Virginia, and State of Louisiana. On approximately September 8, 2016, the defendant signed an independent contractor professional services agreement with Telemed Health Group, LLC (DBA "AffordADoc") ("Telemedicine Company B", and referred to as such in the Information), a telemedicine health care and physician management organization, in which he purportedly agreed to establish a bona-fide patient/physician relationship and to provide telemedicine consultations and health care services via advanced interactive communications, including over the telephone. While working as an independent contractor at Telemedicine Company B, the defendant and his co-conspirators conspired to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as represented; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the Defendant and his co-conspirators.

In furtherance of the conspiracy, the defendant signed orders for DME, including knee, wrist, back, and shoulder braces, regardless of medical necessity, in the absence of a pre-existing doctor-patient relationship, without a physical examination, and/or frequently based solely on a brief telephonic conversation. In exchange for remuneration, the defendant ordered, referred,

and/or caused the submission of claims for DME that were not reasonable, medically necessary, documented, and/or actually provided as represented to Medicare. The defendant knew that he was being paid to approve DME prescriptions and not identify what, if any, legitimate treatment the Medicare beneficiaries required.

Upon learning about the government's investigation, the defendant immediately began cooperating with the government prior to being charged. The defendant proffered with the government in early 2019. On May 8, 2019, the defendant was arrested on the Information and pleaded guilty pursuant to a cooperation plea agreement. The defendant has provided substantial assistance to the government in the investigation and prosecution of others in this case.

## II.    SENTENCING CALCULATION

### A.    Statutory Maximum Sentence

For a violation of 18 U.S.C. § 1349, the maximum statutory sentence is 10 years' imprisonment, up to 3 years supervised release, a fine that is the greater of $250,000 or twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571, and a special assessment of $100.

### B.    Sentencing Guidelines Calculation

In the PSR, the United States Probation Department ("Probation") accurately calculates the defendant's total offense level as 25. This calculation is based on the following:

a)    Base Offense Level. Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level is 6.

b)    Specific Offense Characteristics. Pursuant to U.S.S.G. § 2B1.1(b)(1)(J), a loss of approximately $5,898,180 was caused in furtherance of the criminal activity jointly undertaken by the Defendant and co-conspirators, resulting in an increase of 18 levels to the base offense level.

c) Specific Offense Characteristics. Pursuant to U.S.S.G. § 2B1.1(b)(7), the offense was a Federal health care offense that caused a loss to a government health care program in excess of $1,000,000 resulting in a 2-level increase to the offense level.

d) Role in the Offense. Pursuant to U.S.S.G. § 3B1.3, the defendant abused a position of public or private trust, resulting in a 2-level increase to the offense level.

e) Acceptance of Responsibility. Pursuant to USSG 3E1.1(a) and (b), the offense level is reduced by a total of three points for acceptance of responsibility(- 2 levels); and timely notification to authorities of the defendant's intent to plead guilty (- 1 level).

The defendant has agreed and stipulated to paragraphs (a) through (e) above in the written plea agreement. An offense level of 25 carries a range of imprisonment of 57 to 71 months, as the defendant falls within criminal history category I. The government moves for departure below the calculated sentencing guidelines range, based on the defendant's extensive cooperation and substantial assistance.

**C.      5K1.1 Departure for Substantial Assistance**

Pursuant to USSG § 5K1.1, the court may depart from the guidelines upon the government's motion that the defendant has provided substantial assistance in the investigation or prosecution of other persons. The relevant factors for the court to determine the appropriate reduction may include, but are not limited to the following:

1.      **Nature of assistance.** Section 5K1.1 lists as a relevant factor "the nature and extent of the defendant's assistance." The defendant cooperated early with the government

and provided detailed information about the health care fraud conspiracy and its participants during numerous briefings with federal agents and prosecutors.  The defendant assisted agents in reviewing search warrant materials to identify critical documents regarding other similarly situated physicians who were under investigation.  The defendant also made consensual recordings of telephone calls to co-conspirators on behalf of law enforcement.  In addition to meeting with agents in this district on numerous occasions, the defendant also provided information to several other districts regarding other individuals involved in similar health care fraud and kickback conspiracies. The defendant's information constituted valuable and persuasive evidence that assisted the government in its investigations and prosecutions of others involved in the telemedicine scheme. Last, the defendant was prepared to testify in numerous cases, including *United States v. Hagen*, et al., 19-cr-146 (NDTX) and *United States v. McNeal*, 19-cr-146 (MDFL).

2. **Significance of cooperation.**  Section 5K1.1 lists as a relevant factor "the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered."  The defendant's cooperation was significant.  The detailed information and corroborating evidence that the defendant provided substantially assisted the government in efficiently, and successfully, prosecuting individuals who were responsible for millions of dollars paid by Medicare for DME that were medically unnecessary and procured by the payment of illegal kickbacks. Notably, the defendant was the first medical professional in the scheme to plead guilty and cooperate.

3. **Reliability of information.**  Section 5K1.1 lists as a relevant factor "the truthfulness, completeness, and reliability of any information or testimony provided by the

defendant." The defendant provided information about the conspiracy to commit health care fraud that the government deemed truthful, complete, and reliable.

4.   **Danger to defendant.**  Section 5K1.1 lists as a relevant factor "any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance." Persons who cooperate with the government often face retaliation.

5.   **Timeliness.**  Section 5K1.1 lists as a relevant factor "the timeliness of the defendant's assistance." The defendant indicated his desire to cooperate with the government prior to any charges being filed against him.

6.   **Other factors.**  The court may consider other relevant factors in determining whether and to what extent to depart. The government asks the Court to consider that the defendant has not had any other contacts with law enforcement.

## III.   ANALYSIS OF SENTECING FACTORS

### a.   Legal Standard

In *United States v. Booker*, the Supreme Court held that the Guidelines are advisory and not mandatory, and the Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentences, but also may tailor the sentence in light of other statutory concerns. 125 S. Ct. 738, 743 (2005); see 18 U.S.C. § 3553(a). Subsequent to Booker, the Third Circuit has interpreted Booker to require that sentencing judges follow the following three steps: (1) calculate the Guidelines; (2) rule on motions and departures; and (3) consider the relevant § 3553(a) factors. United States v. Charles, 467 F.3d 828, 830–31 (3d Cir. 2006) (citations omitted).

More recently, in *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A]

district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49 (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the Court] may not presume that the Guidelines range is reasonable. [The Court] must make an individualized assessment based on the facts presented." 552 U.S. at 49-50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court must consider in sentencing the defendant. These factors include:(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to (a) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) afford adequate deterrence to criminal conduct, (c) protect the public from further crimes of the defendant; and (d) provide the defendant with educational or vocational training, medical care, or other correctional treatment; (3) the kinds of sentences available; (4) the Guidelines range; (5) pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution.

**b.    Application of the § 3553(a)  Factors**

**i. Nature of the Offense and Characteristics of the Defendant**

The charged health care fraud scheme was not a momentarily lapse of judgment, but rather a crime that lasted years in which the defendant signed orders for DME that were not reasonable, medically necessary, documented, and/or actually provided as represented to Medicare in exchange for remuneration. The defendant knew that he was being paid to approve DME

prescriptions and not identify what, if any, legitimate treatment the Medicare beneficiaries required. As a medical doctor, the defendant understood that his signed orders were necessary to the scheme because the DME companies could not bill Medicare without a prescription from a doctor.

In committing health care fraud, the defendant placed his own financial greed over taxpayer dollars. As a result of his role in the health care fraud scheme, Medicare paid approximately $3,364,048.71 to DME companies. The defendant reaped profits of approximately $139,000 from his participation in the scheme.

The defendant has acknowledged the crime that he committed. The pleaded guilty and cooperated fully in the prosecution of others involved in the health care fraud scheme.

### i. The Need to Reflect the Seriousness of the Crime, to Promote Respect for the Law, and to Provide Just Punishment

The defendant systematically committed a crime against Medicare—a vital government benefit relied upon by millions of the country's neediest citizens—and siphoned proceeds for personal benefit. Congress aptly summarized the effects of the defendant's crime over thirty years ago:

> In whatever form it is found . . . fraud in these health care financing programs adversely affects all Americans. It cheats taxpayers who must ultimately bear the financial burden of misuse of funds in any government-sponsored program. It diverts from those most in need, the nation's elderly and poor, scarce program dollars that were intended to provide vitally needed quality health services.

H.R. 95-393, pt. II, at 44 (1977). See also H.R. Rep. 104-747 (1996) ("Everyone pays the price for health care fraud: beneficiaries of Government health care insurance such as Medicare and Medicaid pay more for medical services and equipment; consumers of private health insurance pay higher premiums; and taxpayers pay more to cover health care expenditures.").

### ii. The Need to Provide General and Specific Deterrence

The sentence imposed needs to deter not only the defendant, but also similarly-situated individuals from engaging in fraudulent behavior. Health care fraud and kickback conspiracies threaten the integrity of the Medicare program. Because the profits of these schemes are often enormous — the only limiting variables are the criminals' ability to manufacture Medicare claims and their likelihood of getting caught — it is critical to address the problem through systematic deterrence.

Crimes against Medicare, like the one perpetrated by the defendant, are typically difficult to detect and prosecute, so there is a greater need for general deterrence. *See, e.g., Harmelin v. Michigan*, 501 U.S. 957, 988 (1991) (noting that "since deterrent effect depends not only upon the amount of the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties"). Moreover, because "economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *See, e.g., United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, *White–Collar Plea Bargaining and Sentencing After Booker*, 47 Wm. & Mary L. Rev. 721, 724 (2005)) (internal quotation marks omitted)); *United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."). The defendant is an example of this "calculating" criminal. Indeed, the defendant's behavior may be explained, in part, by the fact that he must have perceived the reward as high, and the punishment as low.

Congress recognized the need to afford adequate deterrence as "particularly important in the area of white-collar crime" when it adopted Section 3553. *See* S. Rep. No. 98-225, at 76 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3259. Congress rightly was disturbed that "white collar criminals often are sentenced to small fines and little or no imprisonment," and noted that, "[u]nfortunately, this creates the impression that certain offenses . . . can be written off as a cost of doing business." *Id.* In adopting the Section 3553 sentencing factors, Congress emphasized the essential deterrent value of imprisoning white-collar criminals, even when those criminals themselves might be unlikely to reoffend:

> The Committee is of the view that in the past there have been many cases, particularly in the instances of major white collar crime, in which probation has been granted because the offender required little or nothing in the way of institutionalized rehabilitative measures . . . and because society required no insulation from the offender, without due consideration being given to the fact that the heightened deterrent effect of incarceration and the readily perceivable receipt of just punishment accorded by incarceration were of critical importance. The placing on probation of [a white-collar criminal] . . . may be grossly inappropriate . . . in cases in which the circumstances mandate the sentence's carrying substantial deterrent or punitive impact.

*Id*. at 91-92.

The defendant's punishment should account for the need to deter others from improperly billing Medicare. Crime against Medicare is a serious problem that has warranted national law enforcement attention. In determining a just sentence, the Court should consider the need to promote respect for the criminal laws in order to deter other providers, who, like the defendant, may be tempted to place their financial interests above all else.

### iii. The Sentencing Commission's Guidelines and Policy Statements

The applicable Guidelines calculations for the defendant was described in Section II above.

### iv. The Need to Avoid Unwarranted Sentencing Disparities

The need to avoid unwarranted sentencing disparities may be achieved through the careful calculation and review of the Guidelines range. *See, e.g.*, *Gall*, 552 U.S. at 54 ("Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.").

### v. The Need to Provide Restitution

The government seeks restitution in the amount of $3,364,048.71, which reflects the full amount of the losses sustained by Medicare, the sole victim here, as a result of the defendant's offense conduct. The defendant caused the submission of false and fraudulent claims to Medicare in the amount of approximately $5,898,180. The restitution figure represents the amount Medicare paid on those claims. The Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, *et seq*. ("MVRA"), which governs sentencing in this case, provides that restitution is mandatory for any offense that is "an offense against property under this title . . . including any offense committed by fraud or deceit . . . in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1). The court must order the defendant to pay restitution "in the full amount of each victim's losses" regardless of the defendant's financial resources. 18 U.S.C. § 3664(f)(1)(A). *See also United States v. Jacobs*, 167 F.3d 792, 796 (3d Cir. 1999) (MVRA "mandate[es] full restitution"). The overarching purpose of the MVRA is, "to the extent possible, to make victims whole, to fully compensate victims for their

losses, and to restore victims to their original state of well-being." *United States v. Simmonds*, 235 F.3d 826, 831 (3d Cir. 2000); *United States v. Diaz*, 245 F.3d 294, 312 (3d Cir. 2001).

This Court also may hold the defendant responsible for the entire amount of the losses resulting from the offense conduct. The MVRA specifically provides for joint and several liability for restitution and provides:  "where more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss." 18 U.S.C. § 3664(h); *United States v. Kolodesh*, 787 F.3d 224, 242 (3d Cir. 2015). *See also United States v. Diaz*, 245 F.3d 294, 312 (3d Cir. 2001) (holding that district court may "impose joint and several liability on multiple defendants for restitution, permitting the victim to recover its losses from all or some of the wrongdoers."); *United States v. Sheets*, 814 F.3d 256, 262 (5th Cir. 2016) (finding that the defendant's obligation to pay restitution is not extinguished merely because co-defendants who owed more in restitution satisfied a part of the judgment arising from their joint and several debt. The court reasoned:  "Ensuring that restitution payments from all defendants contribute toward the victim's overall recovery is a simple and uniform means to have victims receive full and timely restitution as provided by law and otherwise ensure that decisions of our district courts align with the purpose of the MVRA.").  This Court also "may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). *See also Diaz*, 245 F.3d at 312. Whether or not to apportion liability is left to the district court's discretion. *United States v. Sensmeier*, 361 F.3d 982, 990 (7th Cir. 2004); *United States v. Zander*, 319 Fed. App'x 146, 150 (3d Cir. 2009) (not precedential).

This Court should award full restitution here and not divide it and apportion the obligation among the defendants. Given the defendant's role in the conspiracy, joint and several liability is the appropriate method of imposing restitution. The defendant, a medical doctor who referred millions of dollars in fraudulent claims to Medicare, was instrumental to the success of the fraud. This Court should not relieve the defendant of his responsibility to pay full restitution by apportioning restitution because the defendant, as the referring doctor, is responsible for all the claims submitted or caused to be submitted by him.

This case presents no special circumstances that would justify apportionment of the restitution award. This determination fully comports with the purpose of the MVRA to assure to the extent possible the full payment of a victim's losses. The defendant agreed to pay this restitution, joint and several with his co-conspirators in paragraph 8 of the plea agreement. The co-conspirators who are jointly and severally responsible for this restitution are Creaghan Harry, Lester Stockett, and Elliot Loewenstern (19-cr-246, DNJ)[1] and Herb Kimble (19-cr-277, DSC).[2] The restitution payments should be made to U.S. Centers for Medicare & Medicaid Services, 7500 Security Boulevard, Baltimore, MD 21244.

IV.      **<u>CONCLUSION</u>**

For these reasons, the government respectfully files this motion in support of a departure below the sentencing range recommended by the sentencing guidelines based upon the defendant's substantial assistance in the investigation and prosecution of others.

Based upon the nature of the information provided in this motion, disclosure of this information may result in harm to the defendant, the defendant's family and others, may

---

[1] The restitution for Harry, Stockett and Loewenstern is over $200 million.

[2] The restitution for Kimble is approximately $40 million.

result in the flight of subjects of an ongoing investigation to avoid potential prosecution, may result in the destruction of or tampering with evidence, or may otherwise seriously jeopardize an ongoing investigation. Therefore, the government respectfully requests that the motion and order regarding this motion be filed under seal. A proposed form of sealing order is attached.

Respectfully submitted,

Jennifer A. Williams
Acting United States Attorney

Joseph Beemsterboer
Acting Chief
Criminal Division, Fraud Section

/s/ Debra Jaroslawicz
DEBRA JAROSLAWICZ
Trial Attorney
Criminal Division, Fraud Section

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Government's Sentencing

Memorandum was served on defense counsel via email.

 /s/Debra Jaroslawicz
DEBRA JAROSLAWICZ
DOJ Trial Attorney

DATE: July 19, 2021

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 19-192** |
| **RANDY LEE SWACKHAMMER** | **:** | |

## <u>ORDER</u>

AND NOW, this      day of          , 2021 upon consideration of the Government's request to impound its Sentencing Memorandum and Motion for Downward Departure from Sentencing Guidelines and accompanying order and docket papers, and after balancing the public right of access to the documents with the government's interest in protecting cooperating witnesses and maintaining the secrecy of ongoing criminal investigations, it is hereby ORDERED that the attached Motion, and accompanying Order and docket papers are SEALED and IMPOUNDED until further Order of the Court.

BY THE COURT:

_____

HONORABLE MARK A. KEARNEY
*Judge, United States District Court*